1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12  FRANK E. FREEMAN and ARLENE F.        CIV. No. 2:15-1359 WBS EFB
    FREEMAN,
13
              Plaintiffs,
14                                        MEMORANDUM AND ORDER RE:
         v.                               MOTION FOR TEMPORARY
15                                        RESTRAINING ORDER
    SELECT PORTFOLIO SERVICING,
16  INC.; NATIONAL DEFAULT SERVICING
    CORPORATION; THE BANK OF NEW
17  YORK MELLON FKA THE BANK OF NEW
    YORK AS TRUSTEE FOR THE
18  CERTIFICATEHOLDERS OF THE CWABS,
    INC., ASSET-BACKED CERTIFICATES,
19  SERIES 2005-IM-3; and DOES 1-20,

20            Defendants.

21

22                         ----oo0oo----

23
              On Friday, June 26, 2015, plaintiffs Frank Freeman and
24
    Arlene Freeman filed an ex parte application for a temporary
25
    restraining order enjoining defendants Select Portfolio
26
    Servicing, Inc. ("SPS"), National Default Servicing Corporation
27
    ("National Default"), and the Bank of New York Mellon ("BNY
28

                                   1

1  Mellon") from foreclosing on plaintiffs' residence at 410 Trotter

2  Drive, Vallejo, California 94591 (the "residence").   The

3  foreclosure sale is scheduled for Monday, June 29, 2015, at 2:30

4  p.m.  (Pls.' Mot. ¶ 6 (Docket No. 2).)  Defendants submitted an

5  opposition to plaintiffs' motion.  (Defs.' Opp'n (Docket No. 5).)

6  The court heard arguments at 10:30 a.m. on June 29, 2015.

7  I.   <u>Factual Background</u>

8           Plaintiffs' case arises from a loan of $535,000 they

9  received from Finance America, LLC to purchase the residence.

10  (Compl. ¶ 14 (Docket No. 1).)  The loan was secured by a

11  Promissory Note and Deed of Trust that were recorded in Solano

12  County, California, on August 8, 2005.  (<u>See</u> Compl. Ex. A.)  The

13  original Deed of Trust listed plaintiffs as the "borrowers,"

14  Finance America, LLC as the "Lender," Julia L. Greenfield, Esq.

15  as "Trustee," and the Mortgage Electronic Registration System

16  ("MERS") as "beneficiary" under the security agreement as nominee

17  for the lender. (Compl. ¶ 15, Ex. A.)

18           Finance America, LLC allegedly ceased operations on or

19  before August 7, 2006.  (Compl. ¶ 5.)  Sometime in 2009,

20  defendants say plaintiffs stopped making payments on their

21  mortgage.  (Defs.' Opp'n at 2.)  Then-loan servicer BAC Home

22  Loans Servicing, LP issued a Notice of Intent to Accelerate on

23  February 10, 2010.  (Decl. of Joseph A. Aguilar ("Aguilar Decl.")

24  Ex. A (Docket No. 5-1).)  The loan was later transferred to SPS

25  for loan servicing.  (<u>See</u> Aguilar Decl. Ex. A.)

26           Two years later, MERS assigned a beneficial interest in

27  the Deed of Trust along with the Promissory Note to BNY Mellon by

28  an Assignment of Deed of Trust recorded in Solano County on March

1    29, 2012.  (Compl. Ex. B.)  MERS also executed a Corporate

2    Assignment of Trust, recorded March 30, 2012, conveying its

3    beneficial interest in the Deed of Trust and Promissory Note to

4    BNY Mellon.  (Compl. Ex. C.)

5           On January 2, 2015, a Substitution of Trustee was

6    recorded appointing National Default as trustee.  (Compl. Ex. E.)

7    National Default then filed a Notice of Default on January 7,

8    2015.  (Compl. Ex. D.)  It stated that plaintiffs were behind on

9    their payments in an amount of $264,415.65 and warned that their

10   residence may be sold at foreclosure approximately ninety days

11   from the date the notice was recorded.  (Id.)

12          National Default attached a "California Declaration of

13   Compliance" to the Notice of Default.  (Id.)  That declaration

14   contained several options with checkboxes to one side.  The first

15   checkbox is marked, next to a statement certifying that, on July

16   14, 2014, contact was made with the borrower to assess the

17   borrower's financial situation and explore options to avoid

18   foreclosure as required by California Civil Code section

19   2923.55(b)(2).  (Id.)

20          A foreclosure sale for the residence was originally

21   scheduled for June 3, 2015, but that sale was cancelled.  (Pls.'

22   Mot. ¶ 6.)  On the day of the original sale, plaintiffs

23   apparently sought an ex parte TRO in Solano County Superior

24   Court.[1]  (See Aguilar Decl. ¶ 3, Ex. B.)  The state court issued

25   _____

         [1]    Plaintiffs' motion does not mention the state court
26   case or offer it as an explanation for why the original sale date
     was cancelled.  However, plaintiffs did file a Notice of Related
27   Cases with their Complaint, informing the court that they had
     previously filed a related case in Solano County Superior Court,
28   Case No. FCS045431.  (Docket No. 1-4.)

                                    3

a TRO, conditioned on the four requirements that: (1) plaintiffs
make one month's mortgage payment by June 16, 2015; (2)
plaintiffs pay all taxes current on their property by June 16,
2015; (3) plaintiffs reimburse defendants for all taxes and
insurance that defendants have advanced on the property by June
16, 2015; and (4) plaintiff post a $5,000 bond by June 10, 2015.
(Id.)  The court then set a hearing for a preliminary junction on
June 17, 2015.  (Id.)  Instead of proceeding to that hearing,
plaintiffs dismissed the lawsuit without prejudice on June 9,
2015.  (Id. Ex. C.)

          Defendants rescheduled the foreclosure sale for June
29, 2015.  Plaintiffs say they never received written notice of
this new sale date.  (See Pls.' Mot. ¶ 6.)  They do not explain
how they learned of the new date.

          On June 25, 2015, plaintiffs filed a Complaint in this
court asserting five claims: (1) cancellation of instruments
under California Civil Code section 3412; (2) violation of
California Business and Professions Code sections 17200 et seq.;
(3) violation of California Code section 2924(a)(6) and (f)(3);
(4) violation of California Civil Code sections 2923.5 and
2923.55; and (5) breach of contract.  (Compl. ¶¶ 31-83.)
Plaintiffs' chief argument alleges that MERS's assignments to BNY
Mellon are invalid because Finance America, LLC could not have
assigned a beneficial interest in the Deed of Trust after going
defunct in 2006.  (Compl. ¶¶ 20-22.)  As a result, plaintiffs
allege that National Default was not validly substituted as
trustee.  (Compl. ¶¶ 23-30.)  The Notice of Default filed by
National Default and the resulting foreclosure proceedings are

4

1  therefore also allegedly invalid.  (Id. ¶¶ 27-29.)

2       Plaintiffs further allege they were not contacted by

3  SPS on July 14, 2014--contrary to the declaration attached to the

4  Notice of Default--and that, in any event, California law

5  requires a more substantial affirmation of contact than the

6  attached "boilerplate" declaration.  (Id. ¶¶ 28, 30, 64.)

7  Defendants also allegedly failed to designate a single point of

8  contact, as required by California law.  (Id. ¶ 65.)

9  II.  Standard for Temporary Restraining Order

10      Federal Rule of Civil Procedure 65 authorizes courts to

11  issue preliminary injunctions and temporary restraining orders.

12  These orders preserve the relative positions of the parties--the

13  status quo--until a full trial on the merits can be conducted.

14  See Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981).

15      A temporary restraining order generally requires the

16  same showing as that required for a preliminary injunction.

17  Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832,

18  839 (9th Cir. 2001).  A plaintiff must establish that (1) it is

19  likely to succeed on the merits; (2) it is likely to suffer

20  irreparable harm in the absence of preliminary relief; (3) the

21  balance of equities tips in its favor; and (4) an injunction is

22  in the public interest.  Winter v. National Res. Def. Counsel,

23  Inc., 555 U.S. 7, 20 (2008); Perfect 10, Inc. v. Google, Inc.,

24  653 F.3d 976, 979 (9th Cir. 2011).

25  III. Discussion

26      A.  Undue Delay

27      Before turning to the merits of plaintiffs' motion, the

28  court finds that denial is warranted on procedural grounds alone.

Eastern District Local Rule 231(b) states:

> In considering a motion for a temporary restraining order, the Court will consider whether the applicant could have sought relief by motion for preliminary injunction at an earlier date without the necessity for seeking last-minute relief by motion for temporary restraining order.   Should the Court find that the applicant unduly delayed in seeking injunctive relief, the Court may conclude that the delay constitutes laches or contradicts the applicant's allegations of irreparable injury and may deny the motion solely on either ground.

E.D. Local Rule 231(b).  Judges in this district have routinely denied temporary restraining orders in mortgage cases when a borrower waited until just before the foreclosure sale to request emergency injunctive relief.  <u>See, e.g.</u>, <u>Salazar v. Moynihan</u>, Civ. No. 2:11-03276 GEB, 2011 WL 6179262, at *1 (E.D. Cal. Dec. 12, 2011) (denying TRO motion filed one day before foreclosure sale); <u>Mammoth Specialty Lodging, LLC v. We-Ka-Jassa Inv. Fund, LLC</u>, Civ. No. S10-0864 LKK JFM, 2010 WL 1539811, at *2 (E.D. Cal. Apr. 16, 2010) (denying TRO motion filed four days before foreclosure sale).

Here, National Default recorded a Notice of Default on January 7, 2015, that should have alerted plaintiffs to the possibility that their home would be sold within ninety days. (Compl. Ex. D.)  Plaintiffs provide no explanation for why they waited more than six months to seek emergency relief.  As explained in Local Rule 238(b), plaintiff's delay is inconsistent with their allegation of irreparable injury.

Plaintiffs do argue that defendants did not contact them before filing the Notice of Default and proceeding with foreclosure.  Even assuming this to be true, however, plaintiffs

1   clearly knew about the Notice of Default and the foreclosure sale

2   when they moved for a temporary restraining order in Solano

3   County Superior Court on June 3, 2015.  Yet, they fail to justify

4   their decision to wait until June 26, 2015, to request emergency

5   relief in this court.

6        The record before this court supports a finding of

7   undue delay.  It shows that plaintiffs waited until the day of

8   the initial foreclosure sale to seek emergency relief in state

9   court.  (See Aguilar Decl. ¶ 3, Ex. B.)  Plaintiffs then decided

10  not to fulfill the conditions set by the state court, which

11  conditions this court finds, and counsel for plaintiffs freely

12  admits, were entirely reasonable, nor to pursue a more permanent

13  resolution there.  Instead, plaintiffs dismissed their state

14  court action and again waited until just before the rescheduled

15  foreclosure sale to request relief from this court.  (See id. Ex.

16  C; Pls.' Mot. ¶ 6.)

17       Plaintiffs' decision to refile substantially the same

18  action in this court rather than to follow through in the state

19  court amounts to forum shopping.  At oral argument on the motion,

20  counsel for plaintiffs candidly acknowledged as much.  The court

21  concludes that plaintiffs deliberately delayed filing both

22  motions in order to frustrate defendants' legitimate attempts at

23  foreclosure.

24       B.   Likelihood of Success on the Merits

25       Even absent a finding of undue delay, plaintiffs have

26  failed to demonstrate their entitlement to emergency relief.

27  Plaintiffs argue that BNY Mellon could not have received a

28  beneficial interest in the Deed of Trust in March 2012 because

1   the original lender, Finance America, LLC, allegedly ceased

2   operating in 2006.  (See Compl. ¶¶ 20-22.)  To plaintiffs, it is

3   unclear how MERS could have assigned a beneficial interest in the

4   mortgage six years after Finance America, LLC went out of

5   business.  (Pls.' Mot ¶ 10; see Compl. Exs. B-C.)

6          Simply reading the Deed of Trust clears up plaintiffs'

7   so-called confusion.  Although it names Finance America, LLC as

8   the "lender," the Deed of Trust states--in bolded font--**"MERS is**

9   **the beneficiary under this Security Instrument**."  (Compl. Ex. A

10  at 2.)  On the third page under the heading "TRANSFER OF RIGHTS

11  IN THE PROPERTY," the document confirms that "[t]he beneficiary

12  of this Security Instrument is MERS (solely as nominee for Lender

13  and Lender's successors and assigns) and the successors and

14  assigns of MERS."  (Id. at 3.)

15         This language conforms to the "MERS system" of managing

16  mortgages.  See Fontenot v. Wells Fargo Bank, N.A., 198 Cal. App.

17  4th 256, 267-68 (1st Dist. 2011) (explaining the MERS system).[2]

18

19         [2]    The "MERS system" has become common practice in the
    mortgage industry.  As the Fontenot court explained,
20
        MERS is a private corporation that administers a
21      national registry of real estate debt interest
        transactions.  Members of the MERS System assign
22      limited interests in the real property to MERS, which
        is listed as a grantee in the official records of
23      local governments, but the members retain the
        promissory notes and mortgage servicing rights.  The
24      notes may thereafter be transferred among members
        without requiring recordation in the public records.
25      . . .  Under the MERS System, however, MERS is
        designated as the beneficiary in deeds of trust,
26      acting as "nominee" for the lender, and granted the
        authority to exercise legal rights of the lender.
27

28  Fontenot, 198 Cal. App. 4th at 267.

                                    8

1    A beneficiary acting as nominee for a lender, such as MERS, "may

2    exercise the rights and obligations of a beneficiary of the deed

3    of trust, a role ordinarily afforded the lender." <u>Id.</u> at 273.

4    California courts have embraced MERS's ability to assign its

5    interest in a Deed of Trust, even when it acts as a nominal

6    beneficiary on behalf of a lender.  See <u>id.</u>; <u>Herrera v. Fed. Nat.</u>

7    <u>Mortgage Assn.</u>, 205 Cal. App. 4th 1495, 1502-06 (4th Dist. 2012).

8    Accordingly, MERS likely had the authority to transfer a

9    beneficial interest to BNY Mellon.

10         Plaintiffs point to two California cases in support of

11   their argument that MERS lacked the authority to transfer its

12   rights in the Deed of Trust: <u>Yvanova v. New Centry Mortg. Corp.</u>,

13   226 Cal. App. 4th 495 (2d Dist. 2014); <u>Glaski v. Bank of America</u>,

14   218 Cal.App.4th 1079 (5th Dist. 2013).  However, these cases

15   address whether a plaintiff has standing to challenge an

16   assignment of a note and deed of trust on the basis that defects

17   allegedly render the assignment void.  See <u>Yvanova</u>, 226 Cal. App.

18   4th at 109-10; <u>Glaski</u>, 218 Cal. App. 4th at 1099.  Because the

19   court concludes that MERS likely had the required authority, the

20   issue of plaintiffs' standing to challenge the assignment is

21   beside the point.

22         Having resolved MERS's assignment to BNY Mellon, it is

23   clear that plaintiffs are not likely to succeed in this action.

24   California law allows a "trustee, mortgagee, or beneficiary, or

25   any of their authorized agents" to conduct foreclosure.  Cal.

26   Civ. Code § 2924(a)(1).  Under California Civil Code section

27   2924b(4), a "person authorized to record the notice of default or

28   the notice of sale" includes "an agent for the mortgagee or

1    beneficiary, an agent of the named trustee, any person designated

2    in an executed substitution of trustee, or an agent of that

3    substituted trustee."  Id. § 2924b(4).

4            If MERS validly assigned its beneficial interest to BNY

5    Mellon, BNY Mellon had the authority to substitute National

6    Default as trustee.  National Default then had the authority to

7    record the Notice of Default and conduct foreclosure.  All of

8    plaintiffs' claims that rely on the theory that MERS could not

9    assign a beneficial interest in the Deed of Trust must therefore

10   fail.  (See Compl. ¶¶ 33-34, 39, 41-44, 57, 59, 62-64, 68, 83.)

11           Plaintiffs also allege various violations of

12   California's Homeowners Bill of Rights ("HBOR") during the

13   foreclosure process that do not rely on their invalid-assignment

14   theory.  Specifically, defendants allegedly failed to designate a

15   single point of contact as required by California Civil Code

16   section 2923.7, and defendants allegedly failed to contact

17   plaintiffs before recording a Notice of Default as required by

18   California Civil Code section 2923.55.  (Compl. ¶¶ 64-65, 71-72.)

19           Plaintiffs have not demonstrated that they are likely

20   to succeed on these claims either.  They offer only declarations

21   from each plaintiff stating that neither was contacted by

22   defendants.  (See Decl. of Frank Freeman ¶¶ 7-8 (Docket No. 2-1);

23   Decl. of Arlene Freeman ¶¶ 7-8 (Docket No. 2-2).)  These

24   declarations are contradicted by the declaration attached to the

25   Notice of Default, (see Compl. Ex. D), and a "contact history

26   report" provided by defendants that details a conversation

27   between an agent of SPS and the borrowers, (see Aguilar Decl. Ex.

28   A at 9-10).  Accordingly, because plaintiffs' declarations are

1   contradicted by clearly documented evidence plaintiffs' success

2   on on these claims appears highly unlikely, plaintiffs have

3   failed to fulfill the first Winter factor.

4          C.    Balance of Equities

5          A temporary restraining order "is an extraordinary

6   remedy never awarded as of right." Winter, 555 U.S. at 24

7   (citing Munaf v. Geren, 553 U.S. 674, 688 (2008)).  In each case,

8   courts "must balance the competing claims of injury and must

9   consider the effect on each party of the granting or withholding

10  of the requested relief."  Id. (quoting Amoco Prod. Co. v. Vill.

11  of Gambell, AK, 480 U.S. 531, 542 (1987)).

12         Here, plaintiffs' long history of default weighs

13  against them.  Plaintiffs have not only failed to make mortgage

14  payments for sixty-seven months, but they have also placed the

15  bank in the position of having to pay plaintiffs' taxes and

16  insurance for the property during that time.  (See Defs.' Opp'n

17  at 6.)  Moreover, when the state court imposed the reasonable

18  requirements that plaintiffs make a mortgage payment and pay

19  defendants for their advanced expenses, plaintiffs did not

20  comply.  (See Aguilar Decl. ¶ 5, Exs. B-C.)  The court therefore

21  concludes that the balance of equities favors defendants.

22         D.    The Public Interest

23         "In exercising their sound discretion, courts of equity

24  should pay particular regard for the public consequences in

25  employing the extraordinary remedy of injunction." Winter, 555

26  U.S. at 24 (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305,

27  312 (1982)).  "The public interest analysis for the issuance of a

28  preliminary injunction requires [the court] to consider 'whether

11

1    there exists some critical public interest that would be injured

2    by the grant of preliminary relief.'"   Indep. Living Ctr. of So.

3    Cal., Inc. v. Maxwell-Jolly, 572 F.3d 644, 659 (9th Cir. 2009)

4    (quoting Hybritech Inc. v. Abbott Lab., 849 F.2d 1446, 1458 (Fed.

5    Cir. 1988)), vacated on other grounds, 132 S.Ct. 1204 (2012).

6          Plaintiffs' failure to make mortgage payments as well

7    as pay their taxes and insurance on the residence for sixty-seven

8    months runs counter to the public interest.   Preliminary relief

9    would permit plaintiffs to further extend the time they remain in

10   their residence without paying, to the detriment of defendants

11   and the larger community of borrowers who do not ignore their

12   financial obligations.   See Herrejon v. Ocwen Loan Servicing,

13   LLC, 980 F. Supp. 2d 1186, 1211 (E.D. Cal. 2013) (O'Neill, J.)

14   ("Granting injunctive relief would be a disservice to public

15   interest by allowing plaintiffs to preclude foreclosure after

16   their default and without legitimate tender of outstanding

17   amounts owed.").

18          IT IS THEREFORE ORDERED that plaintiffs' application

19   for a temporary restraining order be, and the same hereby is,

20   DENIED.

21   Dated:   June 29, 2015

22   _____

23   WILLIAM B. SHUBB
     UNITED STATES DISTRICT JUDGE

24

25

26

27

28

12